HORACE A. GREENWOOD V. GEORGE H. BURTON.

[FILED NOVEMBER 6, 1889.]

**Real Estate Agents:** COMMISSION.  A real estate agent was em-
ployed by one B to effect an exchange of certain real estate with
one C.  He succeeded in making a contract between the parties
for the exchange of said parcels of land, and C complied with
the contract on his part, but B, apparently without just cause,
refused to comply.  *Held,* That the agent was entitled to his
commission.

ERROR to the district court for Gage county.  Tried
below before BROADY, J.

*A. D. McCandless,* and *E. N. Kauffman,* for plaintiff in
error:

There is a failure to prove title in Gray.  The record
shows that he lived some miles from the land; but does not
show whether or not the same was improved.  If it was not
Gray did not even have possession unless he had the legal
title.  (*Yorgensen v. Yorgensen,* 6 Neb., 385.)  His posses-
sion must have been actual, adverse, and continuous.  (*Bald-
win v. Merriam,* 16 Neb., 201; *Hull v. R. Co.,* 21 Id.,
386; *Gatling v. Lane,* 17 Id., 79; *Haywood v. Thomas,*
Id., 237.)  As a sale was not effected, Burton can recover,
if at all, only on a *quantum meruit.* (*McMurtry v. Madi-
son,* 18 Neb., 294; *Gregg v. Loomis,* 22 Id., 182.)

*Geo. B. Everitt,* for defendant in error:

The evidence establishes Gray's title and the instructions
on that question are approved by this court in *Horbach
v. Miller,* 4 Neb., 31, and *Gatling v. Lane,* 17 Id., 79.  A
real estate agent is entitled to commission if he provide one
who is willing to buy or exchange on terms agreed to by
seller even if the sale is finally abandoned. (*Potvin v. Cur-*

*ran,* 13 Neb., 302; *Fisk v. Henarie,* 9 Pac. Rep., 322; *Lockwood v. Halsey,* 21 Id., 98; *Love v. Miller,* 53 Ind., 294; *Sayre v. Wilson,* 5 So. Rep., 157.)

MAXWELL, J.

This action was brought to recover commissions claimed to be due the defendant in error, a real estate agent, upon an exchange of real estate. The cause of action is stated in the petition as follows:

"That on or about the first day of September, 1888, he (Burton) entered into the services of the defendant Greenwood at his request, as agent to trade, exchange, and dispose of certain land described as follows: The northeast quarter of section six, township two, in range eight, in Gage county, Nebraska, for certain other land in said county, for which the defendant Greenwood, agreed to pay plaintiff the sum of fifty dollars.

"The plaintiff negotiated the sale of said land belonging to the defendant Greenwood, upon the terms and conditions and at the time agreed upon and suggested by defendant; that the purchaser procured by the plaintiff for the defendant's aforesaid land, was then and there willing, ready and able to complete the purchase of the defendant's real estate upon the terms and conditions fixed and agreed upon by the defendant Greenwood, with the plaintiff.

"The plaintiff has duly performed all the conditions of said contract on his part to be performed.

"The defendant has not paid the plaintiff the said sum, or any part thereof, for his aforesaid services, and there is now due the plaintiff from the defendant therefor the sum of fifty dollars, with interest on the same from September 1, 1888."

The answer is a general denial. On the trial of the cause there was a verdict and judgment for the plaintiff below. The only error assigned in this court is that the

verdict and judgment are not sustained by the weight of evidence. Burton was called as a witness in his own behalf and testified as follows:

Q. Give the different conversations.

A. Greenwood put this land in my hands, for trade or exchange, some time in August, 1888, and very soon after he put the land into my hands I undertook to get an offer to trade it for a stock of hardware. The trade finally fell through on that, and then I proposed to trade for this Gray land — land belonging to L. D. Gray, sixty acres lying west of Blue Springs — and he and his wife went and looked at it, I think, during the last of August, and he told me how he would trade. I think he told me he would trade with Gray if Gray would give him three hundred dollars and assume the incumbrances on his land. I think there was $1,050 against the Greenwood land unpaid, of back payments — he would trade with Gray if Gray would give him three hundred dollars, and assume the back payments on the land. I went to Gray and Gray made me an offer. I think he offered to give Greenwood one hundred dollars, so they were two hundred dollars apart. I went back to Greenwood, I think on Friday of the last week of August; if I remember right, and told him the result of my conversation with Gray, and he took it under advisement, and the next morning,—Saturday morning, September 1, — I was in Wymore, and met Greenwood on the street. He said: "Come over to the office, I want to talk to you awhile." I went over and into his private room, and he said: "Burton, if we make that trade with Gray we have got to get it before night." " Well," I says, " I will go immediately to Holmesville, if you won't accept his proposition." He said he would not. I said I would go and try to work Gray for another hundred dollars or so. I went to Holmesville, and Gray did come up another hundred dollars to boot, and made his offer two hundred dollars. I telegraphed Greenwood to meet me at Blue Springs

at two o'clock. The telegram was sent from Holmesville over the U. P. wire and telephoned to Wymore. Mr. Gray was going to Blue Springs and I got into my buggy and followed him down. He either followed me or I him, I forget which, and I met Greenwood at Blue Springs at 5 o'clock or thereabouts. He wanted to know what I had done and I told him. He said if Gray would pay the commission on that deal I could close it up on those figures, and I went to Gray.

Q. Whereabouts in Blue Springs were you when this was going on?

A. It was on the street, I think in front of Armstrong's grocery.

Q. Was Greenwood there too?

A. Yes.

Q. Where was Gray?

A. Across the street in the furniture store.

Q. Go ahead.

A. I went to the furniture store and told Gray if he would pay the commission I would close the deal. He said he would not do it. I says: "That is the best you can do?" He says: "That is the best I will do." I then got Gray and Greenwood together, and had them talking quite awhile; and I got Greenwood out on one side and he said: "Burton, you can close the deal on that if you will accept fifty dollars commission." I turned to Gray and told him the trade was made.

He also testifies to the making of a deed by Gray and a check for $200, which is shown to have been drawn on funds of his in a bank of Gage county, and that such deed and check were left with Mr. Burke, an attorney of Blue Springs for delivery to Greenwood upon his delivering a deed for the land he had agreed to give in exchange for that of Gray.

The testimony of Burton is corroborated by that of Gray and Greenwood himself. It is true that Greenwood

claims that there is a failure to prove that Gray had title to the land conveyed by him.    But his title to such land is not put in issue either by the pleadings or proof, and so far as appears it was good.    No objection is made to payment of the $200 due from Gray by his check and no doubt it was regarded as sufficient.

It is evident from the testimony that Burton has performed all the labor required of him in securing an exchange of the land in question and that Greenwood, after having entered into the contract, refused, without sufficient cause, to perform the same.    The verdict and judgment therefore are right and are affirmed.

JUDGMENT AFFIRMED.

THE other Judges concur.